**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KEVIN M. TEICHEN, individually, and on behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiff, | COMPLAINT 1:18-cv-07921 |
| v. | |
| COMENITY CAPITAL BANK, | JURY TRIAL DEMANDED |
| Defendant. | |

**CLASS ACTION COMPLAINT**

**NOW COMES** Kevin Teichen ("Plaintiff") by and through his attorneys James C. Vlahakis, Marwan R. Daher, Omar T. Sulaiman and Alexander J. Taylor of Sulaiman Law Group, Ltd, and on behalf of himself, and the Putative Class set forth below, and in the public interest, hereby brings the following Class Action Complaint against Defendant Comenity Capital Bank:

**NATURE OF THE ACTION, PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Kevin Teichen is a consumer and natural person over 18 years of age who, at all times relevant, resided in the Northern District of Illinois.

2. Plaintiff brings this action seeking redress from the actions of Defendant in knowingly obtaining Plaintiff's consumer report without a permissible purpose , in violation of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. § 1681 et seq.

3. Defendant Comenity Capital Bank ("Defendant" or "Comenity") was formerly known as World Financial Capital Bank and changed its name to Comenity Capital Bank in October, 2012.

4. Defendant is headquartered in Salt Lake City, Utah.

5. Defendant operates as an industrial bank and issues credit cards for retailers.

6. Defendant also underwrites credit programs on behalf of its partners including North America's retail brands.

7. Defendant operates as a subsidiary of Alliance Data Systems Corporation.

8. Defendant is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

9. Defendant is a "financial institution" as defined by 15 U.S.C. § 1681a(t).

10. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

11. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 as Defendant engages in substantial business activity in this District.

12. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this Civil Action occurred within this District.

13. Defendant aided and abetted the acts and omissions alleged herein.

**FACTUAL ALLEGATIONS**

14. PayPal Credit is an open-end (revolving) credit card account that provides a reusable credit line built into your PayPal account giving you the flexibility to pay for your purchases right away or pay over time.

15. PayPal Credit was offered by and through its lender Comenity.[1]

16. On August 3, 2017 Comenity obtained detailed private information about Plaintiff by accessing Plaintiff's credit files through a hard inquiry from Equifax Information Services, LLC ("Equifax").

[1] PayPal Credit is now offered by Synchrony Bank

17. On March 10, 2018 Comenity obtained detailed private information about Plaintiff by accessing Plaintiff's credit files through a hard credit inquiry from Equifax.

18. The below image was taken from Plaintiff's credit report and reflects the hard credit inquiries performed by Defendant.

## Hard Inquiries

Inquiries that may impact your credit rating/score

These are inquiries made by companies with whom you have applied for a loan or credit. They may remain on your file up to 2 years.

| Date | Company | Request Originator |
| --- | --- | --- |
| Mar 10, 2018 | CCB/PPC<br>9690 Deereco Rd<br>Timonium, MD 21093-6991<br>1-866-528-3733 | |
| Aug 03, 2017 | CCB/PPC<br>9690 Deereco Rd<br>Timonium, MD 21093-6991<br>1-866-528-3733 | |

19. In the above image, CCB/PPC is a reference to Comenity.

20. Plaintiff did not have a business relationship with PayPal Credit on August 3, 2017.

21. Plaintiff did not apply for PayPal Credit on August 3, 2017.

22. Defendant's internal records will demonstrate that Plaintiff did not apply for PayPal Credit on August 3, 2017.

23. PayPal Credit's internal records will demonstrate that Plaintiff did not apply for PayPal Credit on August 3, 2017.

24. Plaintiff did not have a business relationship with PayPal Credit on March 10, 2018.

25. Plaintiff did not apply for PayPal Credit on March 10, 2018.

26. Defendant's internal records will demonstrate that Plaintiff did not apply for PayPal Credit on March 10, 2018.

27. PayPal Credit's internal records will demonstrate that Plaintiff did not apply for PayPal Credit on March 10, 2018.

28. Defendant intentionally misrepresented to Equifax that Plaintiff was attempting to obtain credit with Defendant.

29. Defendant falsely certified to Equifax that Plaintiff was attempting to obtain credit with Defendant or had a current credit relationship with Defendant.

30. Defendant intentionally misrepresented to Equifax that Plaintiff had a current credit relationship with Defendant.

31. Defendant falsely certified to Equifax that Plaintiff had a current credit relationship with Defendant.

32. Defendant's misrepresentations resulted in Equifax releasing highly confidential and sensitive personal information concerning Plaintiff to Defendant.

33. Defendant's false certifications resulted in Equifax releasing highly confidential and sensitive personal information concerning Plaintiff to Defendant.

34. At no time did Plaintiff obtain credit with Defendant at the time Defendant's requests were made on the above two dates.

35. At no time did Plaintiff authorize Defendant to obtain at the time Defendant's requests were made on the above two dates.

36. On March 10, 2018, Defendant knowingly and willfully accessed and obtained Plaintiff's credit file from Equifax without the consent of Plaintiff.

37. On March 10, 2018, Defendant knowingly and willfully accessed and obtained Plaintiff's credit file from Equifax without the knowledge of Plaintiff.

38. On August 3, 2017, Defendant knowingly and willfully accessed and obtained Plaintiff's credit file from Equifax without the consent of Plaintiff.

39. On August 3, 2017, Defendant knowingly and willfully accessed and obtained Plaintiff's credit file from Equifax without the knowledge of Plaintiff.

40. Defendant has engaged in a pattern and practice to access consumer reports without a permissible purpose.

41. Defendant has engaged in a pattern and practice to access consumer reports knowingly without a permissible purpose.

42. Despite numerous persons complaining about illegal access to consumer credit reports, Defendant intentionally failed to correct their pattern and practice of accessing these reports without authorization.

43. Despite numerous persons complaining about illegal access to consumer credit reports, Defendant knowingly failed to correct their pattern and practice of accessing these reports without authorization.

44. The actions taken by Defendant on March 10, 2018, and August 3, 2017, were done with malice.

45. The actions taken by Defendant on March 10, 2018, and August 3, 2017, were done wantonly, recklessly and willfully.

46. The actions taken by Defendant on March 10, 2018, and August 3, 2017, were done with the desire to harm Plaintiff.

47. The actions taken by Defendant on March 10, 2018, and August 3, 2017, were done with the knowledge that its actions would very likely harm Plaintiff,

48. The actions taken by Defendant on March 10, 2018, and August 3, 2017, were done with the knowledge that its actions were in violation of the law.

49. Defendant has engaged in a pattern of wrongful and unlawful behavior with respect accessing and obtaining consumer credit files and consumer credit reports.

50. Complaints are visible in public domain. For example:

Unauthorized Hard Inquiry on Equifax Credit Report

Pal102
New Community Member

Unauthorized Hard Inquiry on Equifax Credit Report

On March 16, 2018, I received an alert from credit karma, telling me that a hard inquiry had been made on my credit, and that my credit score was lowered because of it. I never authorized this inquiry. The inquiry was made by: CCB/PPC at <removed>, TIMONIUM, MD 21093, and the phone number suppied belongs to National Credit Card Cos, and it is <removed>. Has this happened to anyone else?

https://www.paypal-community.com/t5/PayPal-Credit/Unauthorized-Hard-Inquiry-on-Equifax-Credit-Report/td-p/1467977

> @PayPalCredit I didn't authorize paypal credit to pull a hard credit inquiry. Unacceptable that this happened.
> — ACJ (@arunjolly) March 26, 2015

https://nethosting.com/paypal-credit-horror-stories-will-make-you-cringe/

51. Defendant both negligently and willfully violated the Fair Credit Reporting Act by impermissibly obtaining Plaintiff's consumer report on March 10, 2018.

52. Defendant both negligently and willfully violated the Fair Credit Reporting Act by impermissibly obtaining Plaintiff's consumer report on August 3, 2017.

53. Defendant has done nothing to remedy the illegal behavior, which persists on a systemic basis.

**IMPACT OFDEFENDANT'S
IMPERMISSIBLE PULLS OF PLAINTIFF'S CREDIT FILE LOWERED PLAINTIFF'S CREDIT RATING**

54. The conduct of Defendant has caused Plaintiff damages in the form of invasion of privacy, and decreased credit scores.

55. According to Fair Issac and Company ("FICO"), credit inquiries are 10% of a person's overall FICO score:



*See* https://www.myfico.com/credit-education/credit-scores/new-credit (last visited November 30, 2018).

56. As a result of the conduct, actions, and inactions of Defendant, Plaintiff has suffered injury to his reputation.

57. As a result of the conduct, actions, and inactions of Defendant, Plaintiff has suffered injury to his credit rating.

58. As a result of the conduct, actions, and inactions of Defendant, Plaintiff has suffered a diminished credit line.

59. As a result of the conduct, actions, and inactions of Defendant, Plaintiff has suffered the loss of ability to obtain credit.

60. As a result of the conduct, actions, and inactions of Defendant, Plaintiff has suffered the loss of ability to purchase from a credit line.

61. As a result of the conduct, actions, and inactions of Defendant, Plaintiff has suffered the loss of ability to benefit from a credit line.

62. Due to Defendant's conduct, Plaintiff is entitled to punitive damages, statutory damages, attorney's fees and all other appropriate measures to punish and deter similar future conduct by Defendant

**COUNT I – INDIVIDUAL VIOLATIONS OF SECTION 1681b OF FCRA**

63. Plaintiff restates and reallages the above paragraphs as though fully set forth herein.

64. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

65. Defendant is a "person" as defined by 15 U.S.C. §1681a(b).

66. Defendant is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

67. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

68. The FCRA prohibits any person or entity from using or obtaining a consumer credit report unless the user has a permissible purpose enumerated under the FCRA. *See* 15 U.S.C. §1681b(f).

69. On August 3, 2017, Defendant requested and received Plaintiff's consumer credit report maintained by Equifax without the Plaintiff's consent.

70. On August 3, 2017, Defendant requested and received Plaintiff's consumer credit report maintained by Equifax in the absence of any permissible purpose.

71. On March 10, 2018, Defendant requested and received Plaintiff's consumer credit report maintained by Equifax without the Plaintiff's consent.

72. On March 10, 2018, Defendant requested and received Plaintiff's consumer credit report maintained by Equifax in the absence of any permissible purpose.

73. Defendant did not have a legitimate business need under the FCRA to pull Plaintiff's credit report on August 3, 2017.

74. Defendant did not have a legitimate business need under the FCRA to pull Plaintiff's credit report on March 10, 2018.

75. Defendant willfully and maliciously violated §1681b(f) when it accessed Plaintiff's credit reports without any permissible purpose under the FCRA.

76. As stated above, Plaintiff was harmed by Defendant's conduct because the impermissible pull of Plaintiff's credit reports contributed to a lower credit score.

WHEREFORE, Plaintiff, KEVIN TEICHEN, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, as follows:

    a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b. Order the deletion or modification of all adverse credit reporting relating to Defendant's credit inquiries;

    c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff recoverable costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

**COUNT II –VIOLATIONS OF SECTION 1681b OF FCRA**
**ASSERTED ON BEHALF OF THE FCRA IMPERMISSIBLE PULL CLASS**

77. Plaintiff restates and reallages the above paragraphs as though fully set forth herein.

78. As for Court Two of this Civil Action, Plaintiff, individually and on behalf of the below "FCRA Impermissible Pull Classes," asserts the following class-based claim Under

79. As set forth above, Defendant routinely obtained the credit reports of Plaintiff and putative class members through "hard" inquiries.

80. As set forth above, Defendant has engaged in a policy and/or practice of pulling credit reports of other people (the "Putative Class Members") without the permission of Putative Class Members.

81. As set forth above, Defendant has engaged in a policy and/or practice of pulling credit reports of other people (the "Putative Class Members") in the absence of any permissible purpose

82. Defendant willfully and maliciously violated §1681b(f) when it accessed Plaintiff's credit reports and the credit reports of each of the Putative Class Members without any permissible purpose under the FCRA.

83. Plaintiff and members of the putative classes were harmed by the misconduct of Defendant in at least the following ways: Defendant routinely accesses consumer credit reports with no permissible purpose which resulted in cognizable harm in the form of diminished credit scores resulting directly from the impermissible credit pulls. See Paragraphs 56-61.

84. Plaintiff and members of the putative classes were harmed by Defendant's conduct because the impermissible pull of their credit reports plausibly contributed to a lower credit score.

85. Defendant's violations have deprived Plaintiff and members of the putative classes of their right to control their own personal information.

86. The right to control their own personal information is a major aspect of privacy that is protected by the FCRA

87. Members of the proposed classes are so numerous that the individual joinder of all of its members is impracticable.

88. While the exact number and identities of the members are unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery.

89. Plaintiff is informed and believes that the proposed classes include thousands of members who can be ascertained by the records maintained by Defendant.

90. A ministerial review of Defendant's records will reflect similarly situated putative class member who were subjected the identical fact pattern – impermissible credit pulls by Defendant without the knowledge and authority of class members.

91. The FCRA violations suffered by Plaintiff are typical of those suffered by other members of the Putative Class, and Defendant treated Plaintiff consistent with other members of the Putative Class.

92. Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

   a. Whether Defendant obtained consumer reports through unauthorized "hard" inquiries;

   b. Whether Defendant's actions violated the FCRA by obtaining consumer reports through unauthorized "hard" inquiries;

   c. The proper measure of statutory and punitive damages; and

   d. The proper form of injunctive and declaratory relief.

93. Plaintiff is an adequate representative of the Putative Class.

94. As a person who had his credit report obtained by Defendant without any permissible purpose, Plaintiff's interests are aligned with, and are not antagonistic to the interests of the members of the Putative Class.

95. Plaintiff has retained counsel competent and experienced in complex class action litigation, including, but not limited to FCRA specific ligation.

96. Plaintiff's lead attorney, James C. Vlahakis, is an experienced consumer class action litigator who has litigated hundreds consumer-based claims. A former defense attorney, Mr. Vlahakis recently was appointed to the Steering Committee in a nationwide class action against Apple, Inc., *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal. May 15, 2018) (Dkt. Entry no. 99), where his is counsel for two dozen proposed class representatives. Mr. Vlahakis began his litigating consumer class actions in 1998 and continued to defend individual consumer claims and putative class action through 2017. Mr. Vlahakis has

litigated a variety of consumer claims, ranging from the Fair Debt Collection Practice ("FDCPA") claims to the Telephone Consumer Protection Act ("TCPA"). In conjunction with counsel for the class members, as a defense attorney, Mr. Vlahakis obtained Court approval of FDCPA and TCPA class class-bases settlements. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc*. (N.D. Ill.) ($3.5 million fax based settlement). Mr. Vlahakis is familiar with class certification proceedings and vigorously litigated and defeated numerous class certification motions. For example, Mr. Vlahakis defeated a TCPA cell phone based proposed class action in *Jamison v. First Credit Services, Inc.* 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013). And in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012), Mr. Vlahakis decertified a putative TCPA cellular phone based class action in.

97. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant.

98. Adjudication of each individual Putative Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, impeding their ability to protect their interests.

99. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Putative Class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the Putative Class as a whole.

100. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

101. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.

102. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar pending claims brought against Defendant by any members of the Putative Class on an individual basis.

103. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgment concerning Defendant's practices.

104. Management of this action as a class action will not present any likely difficulties.

105. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

106. Plaintiff seeks to represent all persons within the United States who had a hard inquiry performed on his or her credit by Defendant and such person had not previously authorized a hard inquiry within the five years prior to the filing of the Complaint.

107. For the time period of five years prior to the filing of the Complaint until the date of final judgment in this action, the "Impermissible Pull Class" can be defined as:

> All persons within the United States who had a hard credit inquiry performed on his or her consumer report by Defendant who had not

> previously authorized a hard inquiry, did not have a business relationship with Defendant, and did not apply for any extension of credit by or through Defendant.

108. Consistent with FRCP 23 and FRCP 1, Plaintiff reserves the right to modify the either of the proposed classes to stay in conformity with FRCP 23 and FRCP 1.

109. For the time period of five years prior to the filing of the Complaint until the date of final judgment in this action, the "PayPal Impermissible Pull Class can be defined as:

> All persons within the United States who had a hard credit inquiry performed on his or her consumer report by Defendant in relation to PayPal Credit who had not previously authorized a hard inquiry, did not have a business relationship with Defendant, and did not apply for any extension of credit by or through Defendant.

WHEREFORE, Plaintiff, KEVIN TEICHEN, on behalf of the above proposed classes, respectfully requests that this Honorable Court enter judgment in his favor and in favor of a proposed classes, and against Defendant, as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion or modification of all adverse credit reporting relating to Defendant's credit inquiries;

c. Award Plaintiff and the class members actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff and the class members statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff and the class members punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff recoverable costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: November 30, 2018

Respectfully Submitted,

*Counsel for Plaintiff and the Putative Class Members*

/s/ Marwan R. Daher

James C. Vlahakis
Omar T. Sulaiman
Marwan R. Daher
Alexander J. Taylor
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
jvlahakis@sulaimanlaw.com
osulaiman@sulaimanlaw.com
mdaher@sulaimanlaw.com
ataylor@sulaimanlaw.com